**Burkart RANDALL, a Division of Textron, Inc., Plaintiff-Appellee,**

v.

**LODGE NO. 1076, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Defendant-Appellant.**

**No. 80–2492.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1981.

Decided May 8, 1981.

Richard Shinners, St. Louis, Mo., for defendant-appellant.

William W. Cody, St. Louis, Mo., for plaintiff-appellee.

Before WOOD and CUDAHY, Circuit Judges, and MAROVITZ, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Lodge No. 1076, International Association of Machinists and Aerospace Workers, AFL–CIO ("Union") appeals from the dis-

* The Honorable Abraham Lincoln Marovitz, Senior District Judge of the Northern District of Illinois, is sitting by designation.

trict court's decision to vacate an arbitrator's award favorable to the Union concerning holiday pay at the Burkart Randall ("Company") production facility in Cairo, Illinois. We affirm in part and vacate in part, and remand for clarification by the arbitrator.

## I.

The Company argued in the district court that the arbitrator exceeded his authority by a) deciding an issue concerning holiday pay that was not fairly within the terms of the collective bargaining contract at issue here, and b) doing so on a basis that is impermissible under the contract. Article 12.1 of the contract specifies several holidays on which the Company's employees need not work but for which they will receive eight hours' pay. If an employee works on a holiday, he or she is entitled to double time pay. Article 12.3E. of the contract states that "[a]ny Holiday which falls on Sunday shall be observed on the following Monday." The holidays involved in this case are the "Day Before Christmas Day" and "Christmas Day."

This dispute arose in 1978 when the Day Before Christmas Day fell on a Sunday. The Company in 1978 paid its workers eight hours' wages for that Sunday holiday, and eight hours'.wages for the consecutive Monday holiday. The Company scheduled regular work for Tuesday, paying its usual straight time wages for the labor done that day. In effect this meant that two separate holidays were observed on 'the same day—Monday.

The Union protested that the Monday holiday should have shifted to Tuesday. Thus, the Union asserted, double time pay is owed to employees who worked that Tuesday.

The parties submitted the problem to arbitrator McPherson after other negotiation procedures specified in the contract proved fruitless. The arbitrator adopted the Company's statement of the issue after determining that both parties agreed on the question. The arbitrator therefore limited his inquiry to whether "the employees [should] have been paid double time for working Tuesday, December 26, 1978." The parties submitted that the issue was arbitrable.

In support of its position, the Union argued that the Day Before Christmas Day and Christmas Day have seldom, if ever, been the same day. The logic of that argument seems irrefutable. The purpose of the contract's holiday provision, the Union said, is to provide a day of leisure as well as a day's pay. Celebrating two holidays on the same day eliminates the leisure-time benefit. The Union also pointed to the Company's handling of the same situation when it arose in 1972 under a prior contract. According to its posted announcement in 1972, the Company did not schedule work for that Tuesday "in observance of the holiday season." The Union contended that the Tuesday holiday observed under the old contract established a binding past practice to which the Company now must adhere.

The Company supported its position by noting that the contract only mentions a shift of holidays in the context of a Sunday shift to Monday. That, said the Company, excluded any other shift. Moreover, the Company said, the contract addresses only wage payment and not leisure-time rights for holidays. So, the Company argued, there is no justifiable reason to shift Monday's holiday to Tuesday. The Company also asserted that despite the language of its announcement, the 1972 Tuesday break occurred because of low seasonal demand for the Company's product, and that a single instance of work scheduling in 1972 cannot establish a binding past practice. As an additional point, at the close of the arbitral hearing, the Company shifted its position on the arbitrator's jurisdiction to decide the issue. The Company said that since the contract does not expressly mention holiday shifts from Monday to Tuesday, the contract left no room for interpretation and therefore the issue fell outside the scope of arbitration.

The arbitrator ruled in favor of the Union, although he noted that both sides had

strong bases for their positions. The point that tipped the balance for the arbitrator was the Company's 1972 practice of not scheduling work on the Tuesday following consecutive Sunday-Monday holidays. The arbitrator agreed "with the Company that a single instance cannot normally establish a binding past practice, but [concluded that] perhaps this is less clear when the same situation has arisen on only one previous occasion." The arbitrator concluded "that the 1972 treatment of the problem is significant, even if it is not considered as a past practice." According to the arbitrator, the failure of the parties to address the issue when they renegotiated the contract in 1976 "appears to indicate an intent to continue their 1972 interpretation," and found the Company's past actions to be binding.

The Company filed this suit to vacate the arbitrator's decision, and the Union cross-claimed to enforce the decision. On cross-motions for summary judgment, the district court held that since the contract was silent as to the shifting of Monday holidays to Tuesday, the arbitrator exceeded his authority by adding a term to the contract. The district court also took note of a provision of the contract which states that the terms of the contract renegotiated in 1976 evidence the complete agreement between the parties, and specifically supersede any earlier express or implied understandings. Thus, according to the district court, the arbitrator exceeded his authority when he relied on the Company's past practice in making his determination. The contract had ruled out that possibility.

This appeal ensued.

## II.

The series of United States Supreme Court cases known as the "Steelworkers Trilogy" establishes the modern context for judicial review of an arbitrator's decision. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The aggregate determination of these cases on the role of judicial review in the arbitration context is that the arbitrator's decision should not be upset unless it is arbitrary or capricious or fails to draw its essence from the collective bargaining contract because it exceeds the confines of interpreting and applying the contract. *American Manufacturing Co.*, *supra*, 363 U.S. at 569, 80 S.Ct. at 1347; *Warrior Gulf & Navigation Co.*, *supra*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53; *Enterprise Wheel & Car Corp.*, *supra*, 363 U.S. at 597, 80 S.Ct. at 1361. *See F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union*, 629 F.2d 1204, 1215 (7th Cir. 1980), *cert. denied sub nom. F.W. Woolworth Co. v. Fell*, U.S., 49 U.S.L.W. 3801 (No. 80–1286 1981); *Amoco Oil Co. v. Oil, Chemical & Atomic Workers Int'l Union*, 548 F.2d 1288, 1293–94 (7th Cir. 1977); *Yellow Cab Co. v. Democratic Union Organizing Committee*, 398 F.2d 735, 737 (7th Cir. 1968). "Neither the correctness of the arbitrator's conclusion nor the propriety of his reasoning is relevant to a reviewing court, so long as his award complies with the aforementioned standards to be applied by the reviewing court in exercising its limited function." *Amoco Oil Co.*, *supra*, 548 F.2d at 1294.

### A. *Arbitrability of the issue.*

The question presented to the arbitrator was whether the Company should have paid its employees double time holiday pay for their labor on Tuesday, December 26, 1978. In order to have the authority to address this question, the language of the agreement must be susceptible to interpretation on that point. The arbitrator's decision is ambiguous as to the basis on which he concluded that the issue submitted was arbitrable. We conclude, however, that it is arbitrable, "in the face of the heavy presumption favoring the arbitration award." *F.W. Woolworth Co.*, *supra*, 629 F.2d at 1214. *See Mobil Oil Co. v. Local 8–766, Oil, Chemical & Atomic Workers Int'l Union*, 600 F.2d 322 (1st Cir. 1979) (court of appeals

may itself resolve question of law whether dispute is arbitrable).

█ The Union says that the employees are entitled to double pay for their Tuesday work because under the agreement a holiday is meant to be a day of leisure as well as a guarantee of pay. The Union's analysis is supported by the contract viewed, as it must be, "in the light of its language, its context, and any other indicia of the parties' intention." *F.W. Woolworth Co., supra*, 629 F.2d at 1215. Article 12.1 provides for a wage premium of double pay for those who work on a holiday "regardless of the day of the week on which [the holiday] may fall." It is reasonable to assume that the extra pay is provided because the worker who renders services to the Company on a holiday gives up leisure time to which he or she is entitled under the agreement. Moreover, under Article 12.3D., holidays consist of twenty-four consecutive hours. In this way, the contract provides substance to the abstract term "holiday" by orienting it to time as well as monetary relationships. The time relationships may reasonably be read to explain the monetary provisions, and vice versa: a premium is required because the employee's leisure time is lost. Since employee leisure time may fairly be considered a component of a holiday under the contract, it was for the arbitrator to determine when the loss of that leisure time, if any, must be compensated.

█ The Company's statement that everyone involved in this case agrees that the article governing holidays is not ambiguous is simply incorrect. The Union consistently has contended that the provision grants employees a right to leisure time, a point which we have concluded may arguably be found in the contract. When the Union's contention in this regard is measured against the Company's argument that no leisure time rights are granted in the contract, it is apparent that there exists an ambiguity in the contract's provisions. That ambiguity is precisely the question to which the arbitrator addressed himself. The determination of arbitrability does not add a provision to the contract. It merely interprets existing provisions. The arbitrator thus did not violate Article 24 of the contract, which in general terms prohibits him from adding to or modifying the contract. The judiciary has no business overruling the arbitrator's interpretation in such an instance. *Enterprise Wheel & Car Corp., supra*, 363 U.S. at 599, 80 S.Ct. at 1362.

As to the significance of the Sunday to Monday shift contained in Article 12.3E., we begin our analysis by noting that the arbitration clause in this contract is broad: it permits arbitration of any grievance not settled by the earlier steps of the grievance procedure. A grievance is defined as *"any dispute* between the Company and the Union ... concerning interpretation, application, or violation of" the contract. Article 23.1 (emphasis added). "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." *Warrior & Gulf Navigation Co., supra*, 363 U.S. at 584–85, 80 S.Ct. at 1353–54.

The Sunday to Monday holiday shift clause contained in Article 12.3E. is not an express provision excluding from arbitration the claim that the contract requires both days of consecutive holidays to shift ahead where the first occurs on a Sunday. In support of its contrary position, the Company merely urges one interpretation of Article 12.3E. Other views are equally compelling. For instance, Article 12.3E. deals with holiday shifts involving weekend holidays. The Article could reasonably be viewed as requiring shifts only for a holiday falling on Sunday and not Saturday, leaving entirely open the interpretation of other provisions as applicable to shifting *weekday* holidays. Or the Article may fairly be read to deal with Sunday holiday shifts where the following Monday is not *already* a holiday. That, too, is a plausible interpretation given the express statement in Article 12.-3E. that "such Mondays are within the

means of the term 'Holiday' ", a point that could be viewed as mere surplusage if the Article was intended to cover Monday holidays as well. Other provisions of the contract implying an employee right to leisure time, as noted earlier, may be interpreted to govern situations where Monday already is a holiday.

We need not decide which interpretation is most compelling. That is for the arbitrator to do. Under either analysis, the contract leaves entirely open the question of *weekday* holiday shifts, which an arbitrator might or might not conclude must occur in the event of consecutive holidays. Given the Supreme Court's clear message that any doubts as to whether a contract excludes issues from arbitration are to be resolved in favor of *inclusion*, the arbitrator acted well within his authority when he interpreted the holiday provisions of the contract. We especially note this circuit's caution against allowing a party to use issues of the arbitrator's authority as a ruse to obtain judicial review on the merits of an arbitral award. *Amoco Oil Co., supra,* 548 F.2d at 1295. *Cf. International Ladies' Garment Workers Union v. Ashland Industries, Inc.,* 488 F.2d 641 (5th Cir. 1974) (courts review merits of arbitration only to insure arbitrator confined decision to interpretation and application of collective bargaining agreement).

The Company's citation of *Torrington Co. v. Metal Products Workers,* 362 F.2d 677 (2d Cir. 1966) thus is inapposite on this point. In that case, during renegotiation of a collective bargaining contract the union sought an express provision reinstating the company's past informal practice of permitting employees time off with pay to vote in elections. The company refused, having recently revoked the past policy. The union apparently dropped its demand for an election day pay provision and no such provision was placed in the new contract. The union took the issue to arbitration under the new contract, and the arbitrator concluded that the company's past practice bound its future conduct. The appeals court upheld the district court's decision vacating the arbitrator's award, stating that "[w]hile it may be appropriate to resolve a question never raised during negotiations on the basis of prior practice in the plant or industry, it is quite another thing to assume that the contract confers a specific benefit when that benefit was discussed during negotiations but omitted from the contract." *Id.* at 681. The arbitrator in *Torrington* thus *added* a provision to the contract since the specific issue he decided had been the subject of negotiation but was not included in the final contract. By contrast, the present case involves an ambiguous contract provision that lacks a past history of contract negotiation, at least on this record. While the meaning of the provision may not, according to another provision of the contract, be determined by the parties' past practice, that limiting provision, which we discuss next, does not preclude *all* consideration of the contract's ambiguous holiday clauses.

### B. *Authority to Consider Prior Practice*

Our discussion of the arbitrator's authority does not end with the question of general arbitrability since, as noted, Article 38 of the contract expressly provides that the parties' past mutual understandings form no part of the new contract. "[W]hile courts should be wary of rejecting the arbitrator's interpretation of the implications of the parties' prior practice, the mandate that the arbitrator stay within the confines of the collective bargaining agreement ... requires a reviewing court to pass upon whether the agreement authorizes the arbitrator to expand its express terms on the basis of the parties' prior practice." *Torrington, supra,* 362 F.2d at 680. In the present case, an explicit contract provision restricts the arbitrator's use of past practice to elucidate the meaning of contract provisions. If the arbitrator in this case relied solely on the Company's practice under the old contract to resolve all the issues, as he may have done, he exceeded his authority.

Our consideration of this question must take into account one important aspect of the hearing before the arbitrator. The record does not show that the Company or the

Union argued to the arbitrator the relevance of Article 38. Indeed, it appears that the Company's attack on the use of its 1972 action as past practice was confined to the propriety of allowing a single past incident to create a binding "practice." While the Company argued that any arbitral action concerning the holiday provisions would be impermissibly adding to or modifying the contract, it apparently never suggested to the arbitrator that the use of past practice might itself impermissibly modify Article 38. The Company waited until it was before the district court to draw attention to Article 38. It is not clear from the record that the parties put the entire contract, including Article 38, before the arbitrator so that he could reasonably be apprised of all its provisions.

As noted earlier, the arbitrator's decision is ambiguous on the question of whether or not he concluded that the contract's holiday provisions embodied a leisure-time component. As the Union points out, the leisure-time component is essential to its theory that the issue submitted by the parties is arbitrable, and the arbitrator proceeded to decide the issue presented by the parties despite the Company's last-minute argument that it was not arbitrable. So at first glance it would seem that the arbitrator agreed with the Union on that point. But the problem in this case arises because a determination on the leisure-time aspect of the provision would in itself appear to dispose of the question framed by the parties: if the employees were entitled to be compensated for lost holiday leisure, they were owed double time wages by the Company, it seems, regardless of past practice. It thus is unclear whether the arbitrator viewed the Company's past practice as part of the overall submission but separate from the question of arbitrability, or as a matter upon which the questions of arbitrability and a proper award both turned.

While the arbitrator's conclusion is that double time pay is owed to the employees, it is uncertain that the text of his decision dealing with the Company's past practice is germane to the issue presented. In such a case it is reasonable to remand to the arbi-

trator. See Int'l Assoc. of Machinists & Aerospace Workers v. Aerojet-General Corp., 263 F.Supp. 343, 346 (C.D.Cal.1966). Though we have concluded that the question of the leisure-time concept is arbitrable, we cannot usurp the arbitrator's function to determine whether or not the contract in fact embodies that concept. It is appropriate to remand this case for a clarification as to whether or not the leisure-time component controls here, or whether the decision can only rest on the Company's past practice, which, as we have noted, would be an improper basis for decision.

We are aware that courts must approach remand to the arbitrator with care lest the arbitrator believe that a "remand" is equivalent to "retrial" with an expectation of an opposite result the second time around. See generally Paperhandlers Union No. 1 Int'l Printing Pressmen & Assistants Union v. U. S. Trucking Corp., 441 F.Supp. 469, 474 (S.D.N.Y.1977). An arbitrator's decision need not be free from ambiguity to be upheld, nor need the arbitrator even state reasons for his or her decision. Enterprise Wheel & Car Corp., supra, 363 U.S. at 598, 80 S.Ct. at 1361. But once the reasons that are given strongly imply that the arbitrator may have exceeded his or her authority under the submission and contract—whether that implication appears in the form of vague or inconsistent results or possible extensions beyond the terms of the contract—the device of remand is appropriate to avoid having courts rather than the arbitrator clarify the bases for the initial determination. See generally Locals 2222, 2320–2327, Int'l Brotherhood of Electrical Workers v. New England Telephone & Telegraph Co., 628 F.2d 644, 648 (1st Cir. 1980). This has special application here since the possibility that the arbitrator overstepped his bounds on the reasons supporting his decision may have come about because the parties failed adequately to address their contentions to him in the first instance. Cf. Electronics Corp. of America v. Int'l Union of Electrical, Radio & Machine Workers, 492 F.2d 1255 (1st Cir. 1974) (re-submission under federal arbitration law

when incorrect fact relied on by arbitrator due to lack of emphasis in parties' presentation and lapse of time before decision). While the *Electronics Corp.* court permitted the parties to agree to a new arbitrator, we see no need to require one in this case, since the clarification needed is specific to the language used by the original arbitrator in rendering his decision.

### III.

We affirm the district court insofar as it concluded that the arbitrator exceeded his authority if he based his decision solely on the Company's past practice. However, we vacate the district court's judgment to the extent that it holds the holiday pay issue non-arbitrable, and remand with instructions to further remand to the original arbitrator for his clarification in accordance with this opinion. By providing for further consideration by the arbitrator, we do not intend to express any view as to the ultimate merits of the issue.[1]

VACATED AND REMANDED.

---

1. The district judge cited Illinois case law as governing contract interpretation in this case. Our resolution of this appeal does not require that we decide the extent to which state contract law may, if ever, apply to a federal labor case of the sort presented here.