The **MEAD CORPORATION, MEAD PACKAGING DIVISION**

v.

**INTERNATIONAL PRINTING AND GRAPHIC COMMUNICATIONS UNION, BRISTOL LOCAL 497, AFL–CIO.**

Civ. A. No. 82–5236.

United States District Court,
E.D. Pennsylvania.

Oct. 7, 1983.

Francis M. Milone, Morgan, Lewis & Bockius, Philadelphia, Pa., Robert J. Brown, Smith & Schnacke, Dayton, Ohio, for plaintiff.

Keith R. Bitzel, Ira H. Weinstock, P.C., Harrisburg, Pa., for defendant.

## OPINION

LUONGO, Chief Judge.

In this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, The Mead Corporation (Mead) seeks to have vacated an arbitration award rendered against it, and in favor of David Taylor and the International Printing and Graphic Communications Union, Bristol Local 497 (the Union). The Union has counterclaimed, seeking enforcement of the arbitrator's award as well as costs and attorney's fees. The parties have filed cross-motions for summary judgment which are now before the court.

## BACKGROUND

This controversy arose out of David Taylor's discharge from employment with The Mead Corporation in January, 1982. Employed as a forklift operator from June, 1978, Taylor was dismissed after a confrontation with his supervisor, Dave St. Germain. On January 4, 1982, Taylor reported for work on Mead's night shift at 11 p.m. At approximately 3 a.m. on the morning of January 5, he went to lunch in the company's "vendateria." (Arb.Dec. at 1). While on his lunch break, Taylor was required to return to the production floor in order to operate the forklift. Such interruptions apparently were often necessary because Taylor was the only employee on the night shift permitted to use the forklift. (Union's Post-Arbitration Brief at 2). When he had completed the needed operations, Taylor returned to the vendateria to finish his lunch.

At that time, Supervisor St. Germain entered the vendateria and ordered all employees back to work. St. Germain permitted three employees who had received permission to change their lunch period to remain. Taylor and one other employee also failed to return to work. Supervisor St. Germain then specifically ordered them to leave. One employee complied, but Taylor engaged in an outburst that led to his discharge. The arbitrator described Taylor's behavior in his written opinion:

Pounding the table as he leaped to his feet, grievant [Taylor] yelled at St. Germain: "Nobody's going to tell me when to take my fucking lunch. I'm going to take my fucking lunch any fucking time,

and if you don't like that it's too fucking bad." He repeated these words at least twice more, possibly three times, as he rushed toward the two supervisors. According to the supervisors, grievant kicked over one or more chairs. Grievant denied kicking over a chair, but stated that his own slid back as he stood up. Grievant waved his arms (not, apparently, as if to strike anybody), and stopped in front of the supervisors. (Arb.Dec. at 2–3). The arbitrator found that Taylor then asked his supervisor whether to return to work, but received no reply. (Arb.Dec. at 4). After a meeting later that afternoon, Taylor was suspended indefinitely for violation of Company Rule Group II, Rule 12—Insubordination, and one week later he was dismissed from the Company's employ.

Pursuant to the collective bargaining agreement then in effect, the Union challenged Taylor's discharge through the grievance procedure. Failing to reach a settlement of the grievance, the parties proceeded to arbitration.

In an award accompanied by a written opinion, Arbitrator Seymour Strongin sustained Taylor's grievance "to the extent that the penalty is converted to a three-day suspension." (Arb.Dec. at 7). In reaching his decision, the arbitrator closely examined the terms of Company rule 12 which is incorporated into the collective bargaining agreement by Article XV of the contract. Rule 12 defines insubordination as "refusal to perform a service as required by a supervisor or manifesting an unwarranted offensive of [sic] uncivil attitude toward a supervisor." For violation of Group II Rules such as rule 12, the penalty listed for the first violation is discharge. The arbitrator first reasoned that Taylor did not refuse to perform any service for his employer, and thus could not be discharged for violation of the first part of rule 12. Then, addressing the Company's major contention, the arbitrator held that Taylor's *conduct,* although both offensive and uncivil, did not manifest an offensive or uncivil *attitude* within the meaning of the second part of Company rule 12. Moreover, the arbitrator noted that Taylor's conduct occurred in response to a supervisor's order that he leave the vendateria at a time when he was finishing his once interrupted lunch. The arbitrator reasoned, therefore, that Taylor's "reaction may not be termed 'unwarranted' in the sense of 'inexcusable.'" (Arb.Dec. at 6).

Finally, the arbitrator found that Taylor did not physically threaten or strike his supervisor, and that Taylor had no previous record of violence or confrontations. (Arb. Dec. at 6).

As emphasized by Mead Corporation in its briefs, the arbitrator did not, however, totally exonerate Taylor. The arbitrator noted that Taylor "should not have lost his temper," and decided that "a suspension for the rest of the calendar week might be sustained as an appropriate penalty for the brief loss of self-control." (Arb.Dec. at 6–7).

## DISCUSSION

In its suit to vacate the arbitration award, Mead claims that, in view of the arbitrator's "specific findings as to the grievant's conduct," the award "fails to draw its essence from the terms of the Agreement." (Complaint ¶ 12). Additionally, Mead argues that the arbitrator's imposition of a three-day suspension against Taylor because of his outburst indicates that Taylor necessarily violated *some* Company rule, even if misconduct to the level of insubordination had not occurred. Mead points out that for violation of minor Company rules, so called Group I Rules, the collective agreement incorporates a schedule of progressive discipline which specifies discharge as the sanction for a fourth violation unless one of the employee's offenses occurred six months or more after the preceding violation.[1] Mead then notes that

1. Article XV of the collective agreement incorporates a list of Company rules for employee conduct. Group I of these rules subject an employee to various levels of discipline for:

Taylor had three active violations of Group I Rules at the time of the incident involving supervisor St. Germain.[2] The Company argues, therefore, that because the arbitrator necessarily found Taylor guilty of *an* offense under the collective agreement, such offense could entail a penalty no less than that provided for Group I offenses. Further, Mead concludes that because Taylor was subject to discharge for commission of any additional Group I offenses, the arbitrator's finding of a minor offense requires that the discharge penalty be sustained.

In response to Mead's claims, the Union argues that the arbitrator's decision draws its essence from the collective agreement. The Union denies that the arbitrator found Taylor guilty of a minor violation of Company rules. The Union explains the arbitrator's deduction of three days' pay from his back pay award as either an administrative convenience afforded to Mead or as a suspension imposed by the arbitrator in light of the equities of the case, notwithstanding the absence of a violation of Company rules by Taylor. Finally, the Union contends that Mead's suit to vacate the award was brought in bad faith, and seeks an award of attorney's fees.

The first question to be decided in this case is whether the arbitrator's decision that David Taylor was not insubordinate within the meaning of Company rule 12 draws its essence from the collective agreement. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593,

597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *W.R. Grace and Company v. Local Union 759, International Union of the United Rubber, Cork, Linoleum and Plastic Workers,* —— U.S. ——, ——, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). This question is one of contract interpretation over which the federal judiciary has been instructed to exercise only limited review. As the Supreme Court stated in *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra:*

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

363 U.S. at 599, 80 S.Ct. at 1362.

Subsequent decisions of the Court of Appeals for the Third Circuit have elucidated the proper scope of judicial review over arbitral awards. In *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969), the leading case in this area, the court held that an arbitral award is to be sustained:

> ... if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a

1. Inefficiency or lack of aplication [sic] on the job.
2. Habitual tardiness or chronic absenteeism.
3. Excessive failure to punch in or out.
4. Failure to report accident or injury to supervisor.
5. Smoking outside designated areas.
6. Gambling.
7. Garnishment.
8. Working on personal projects on Company time and property without permission.
9. Failure to obey traffic and parking regulations on Company Premises.
10. Creating or contributing to unsanitary conditions.
11. Either failure to notify the Company when absent from work; or failure to give satisfactory reason for absence from work.
12. Leaving the job during working hours without permission.
13. Posting, distributing, or circulating unauthorized notices, posters, handbills, placecards, cards, etc. on plant premises.
14. Punching, signing, or recording the time of another employee.
15. Conduct which endangers other employees.
16. Reporting for duty while under the influence of liquor or narcotics.

2. This fact was made known to Arbitrator Strongin by means of the Company's post-hearing submission. (Company's Post-Arbitration Brief at 2).

manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award. (footnote omitted)

Several recent cases illustrate the wide latitude accorded an arbitrator's interpretation and application of a collective agreement. In *ARCO-Polymers, Inc. v. Local 8–74*, 671 F.2d 752 (3d Cir.) (per curiam), *cert. denied,* —— U.S. ——, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982), the court ruled that an arbitrator's decision to award reinstatement without back pay to an employee who was dismissed for excessive unexcused absence was entitled to enforcement. The employee in *ARCO-Polymers* was absent between February 6 and February 25, 1980, and was unable to show good cause for his absence upon return. The collective agreement provided that unexcused absences for more than four days would subject an employee to discharge. Reversing the district court's decision to vacate the award, the court of appeals ruled that the award drew its essence from the collective agreement. The court reasoned that the arbitrator may have applied the general contractual requirement that discharges be for just cause even to discharges apparently covered by the specific absenteeism provision. 671 F.2d at 756. The court also reasoned that the arbitrator may have interpreted the absenteeism provision as not *requiring* discharge as the penalty, but merely permitting that sanction in appropriate cases. The court suggested further that the arbitrator might have defined just cause in a fashion to require progressive discipline. *Id.*

Similarly, in *Mobil Oil Corporation v. Independent Oil Workers Union*, 679 F.2d 299 (3d Cir.1982), the court ruled that an arbitrator's decision to award conditional reinstatement to a discharged employee was properly enforced. In *Mobil Oil,* an employee with a poor work record was discharged for fighting on the job. The collective agreement provided that the Company had the right to suspend or discipline employees for cause, and the Company had a plant rule prohibiting fighting. The arbitrator, however, ordered conditional reinstatement without back pay. The arbitrator reasoned that the employee had suffered from a mental disorder during the period prior to his discharge, and thus concluded that just cause had not been established. The arbitrator relied heavily on events that occurred after the employee's discharge in finding that the employee had been mentally disturbed, despite the fact that Mobil had no knowledge of the employee's disorder at the time of the incident. 679 F.2d at 301.

In affirming the district court's decision to enforce the award, the court of appeals ruled that post-discharge events could properly be considered by the arbitrator in determining whether the discharge was for just cause. 679 F.2d at 303. Moreover, although the court recognized that an inference that the arbitrator "substituted his own sense of equity" by ordering reinstatement was not unreasonable, the court held that the arbitrator could simply have decided that just cause for discharge had not been established under the circumstances presented. *Id.* at 304.

Finally, in *Kane Gas Light and Heating Co. v. International Brotherhood of Firemen and Oilers, Local 112*, 687 F.2d 673 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1251, 75 L.Ed.2d 480 (1983), the court ruled that the district court properly enforced an arbitrator's award of reinstatement and back pay (with the exception of thirty days' pay which the arbitrator considered a proper penalty) to an employee discharged for shutting off the main gas valve into a borough when the temperature was ten degrees below zero. The effect of the employee's action was to create a serious risk of fire and explosion in addition to the obvious danger to the residents' health. The arbitrator ruled that, although the employee had been mistaken in judgment, he did not act intentionally, or for the purpose of reducing the flow of gas into the borough. 687 F.2d at 677. The arbitrator therefore ruled that, under the just cause provision of the collective agreement, discharge was too severe a penalty, and reduced the sanction to a thirty-day suspension.

On appeal of the district court's order enforcing the award, the court of appeals held that the arbitrator remained within the "four corners of the contract," and affirmed. 687 F.2d at 681. Despite numerous references to the court's discomfort with the arbitrator's decision on the merits of the initial grievance, the court held that the employer, having bargained for the final and binding judgment of an arbitrator to resolve contractual disputes, could not later obtain a judicial determination on the merits simply because the arbitrator may have reached an incorrect result. *Id.*

The *Kane Gas Light* court, of course recognized that there are limits to the judiciary's deference to arbitral decisions. As the Supreme Court stated in *Enterprise Wheel,* an arbitrator "does not sit to dispense his own brand of industrial justice." 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424. For example, "an arbitrator's decision should be vacated when the arbitrator finds facts that constitute grounds for discharge under the collective bargaining agreement [such as insubordination in the instant case], but, in disregard of those facts and the terms of the agreement, refuses to uphold the discharge." *Kane Gas Light,* 687 F.2d at 680.

■ Reviewing the largely undisputed evidence presented regarding the conduct of Mr. Taylor on January 5, 1982 and the arbitrator's decision and opinion, I am unable to conclude that the arbitrator's award failed to draw its essence from the collective bargaining agreement. Initially, although the arbitrator expressed disapproval of Taylor's momentary loss of temper, the arbitrator clearly ruled that the employee had not been insubordinate within the meaning of Company Rule Group II, Rule 12. This is not, therefore, a case in which the arbitrator found facts which call for discharge under the collective bargaining agreement, but refused to sustain a mandatory penalty. *Cf. Kane Gas Light, supra; International Brotherhood of Firemen and Oilers, Local 935–B v. Nestle Co., Inc.,* 630 F.2d 474 (6th Cir.1980).

With respect to the merits of the grievance sustained by Arbitrator Strongin, I am further unable to conclude that the award was "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d at 303, *quoting Safeway Stores v. American Bakery and Confectionery Workers International Union, Local 111,* 390 F.2d 79, 82 (5th Cir.1968). The arbitrator decided that Mr. Taylor's momentary outburst, although improper, did not constitute insubordination within the meaning of the collective agreement. In so ruling, he interpreted quite narrowly the definition of insubordination contained in the Company rules, distinguishing between an "offensive or uncivil *attitude*" (proscribed by the rule) and "offensive or uncivil *conduct.*" (Arb.Dec. at 5, emphasis in original). Reasoning that it was not the purpose of the collective agreement to punish with immediate discharge every episode involving offensive or uncivil conduct, the arbitrator noted that Taylor had not attacked or threatened the supervisor, and ruled that an attitude proscribed by the rule had not been established by this single incident. (Arb.Dec. at 5–6).

Such an application of the collective agreement to the facts of this case is not impermissible. If faced with the merits of this dispute in the first instance, this court might well decide that the definition of insubordination incorporated in the collective agreement was not intended to be construed in such an exacting fashion. However, in view of the narrow scope of review exercised over arbitral decisions, I am unable to rule that the arbitrator's determination "manifest(s) an infidelity" to the expressed intent of the parties. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361.

■ The second question to be decided is whether, as Mead contends, the arbitrator found Taylor guilty of a minor violation of Company rules, so called Group I Rules, thus rendering him subject to discharge un-

der the Company's progressive discipline schedule.[3]

There is no explicit mention that Taylor might have violated a Group I Rule in the arbitrator's opinion or decision. Indeed, in reviewing the collective agreement, the Group I Rules, although not an exclusive set of precepts, do not appear to cover conduct of the sort presented.

Mead argues, however, that by permitting a deduction of three days' pay from Taylor's back pay award, the arbitrator found him guilty of a Group I Rule violation. Under the "just cause" provision of the collective agreement, the Company first argues that the punishment imposed against Taylor necessarily required the arbitrator to find him guilty of *some* offense. Then, because the arbitrator has no power to create new categories of substantive offenses, the Company concludes that the arbitrator held Taylor culpable under the non-exclusive Group I category of minor offenses.

The Company's contention is not without substance. That the arbitrator found fault on Taylor's part is made clear by the arbitrator's characterization of the three-day deduction as a "suspension" and a "penalty." (Arb.Dec. at 7).

However, the arbitrator's withholding of a portion of Taylor's lost wages in forming his back pay award does not necessarily indicate that Taylor was found guilty of a Group I offense. Although the arbitrator's decision to punish Taylor by a three-day suspension was based on the arbitrator's conclusion that Taylor acted improperly, there is no indication that the arbitrator considered, much less found the grievant guilty of a Group I offense. Indeed, the arbitrator did not expressly find that Taylor had engaged in any behavior for which Mead could have disciplined him under the collective agreement.

Contrary to the Company's argument, the arbitrator's decision to penalize Taylor can nevertheless be explained plausibly as an exercise of the arbitrator's discretion in formulating an appropriate remedy based on the equities of the grievance before him. Viewed in this manner, I cannot conclude that the arbitrator exceeded the permissible

---

**3.** I have seriously considered the possibility of remanding this case to Arbitrator Strongin for a determination of the question whether Taylor's discharge was justifiable as a fourth Group I offense. The power of a federal court to order remand of an arbitration award is, of course, well established. *La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 574 (3d Cir. 1967); *Burkart Randall v. Lodge No. 1076, International Association of Machinists and Aerospace Workers,* 648 F.2d 462 (7th Cir. 1981). On the facts of this case, however, I do not find a sufficient basis for such an order. Initially, the final arbitral award is not ambiguous; the parties know exactly the result of the arbitrator's decision. More importantly, the arbitrator's opinion does not on its face disclose an improper basis for reaching that result. The arbitrator found that the grievant had not committed a Group II offense, and did not explicitly find that he had transgressed a Group I rule. Indeed, it is questionable whether evidence of the alleged Group I offense was properly placed in evidence before the arbitrator. This is not a case, therefore, in which remand is appropriate because of evidence that the arbitrator exceeded his authority under the collective agreement.

In this respect, the Seventh Circuit Court of Appeals' decision in *Burkart Randall, supra,* is distinguishable from the case at bar. In *Burkart Randall,* an arbitrator was called upon to decide a dispute concerning holiday pay. The union there contended that an employer was bound to pay a holiday premium for work performed on Tuesday, December 26 because the employees were entitled to a paid holiday for December 24 which fell on a Sunday. Despite a clear provision in the collective agreement providing that past mutual understandings between the union and the employer formed no part of the current contract, the arbitrator relied on previous agreements to resolve similar disputes in the union's favor and awarded holiday pay. The Seventh Circuit ruled that the arbitrator exceeded his authority by relying on the earlier understandings, and ordered the case remanded to the arbitrator.

In the present case, there is no explicit indication that the arbitrator decided Taylor's grievance on an improper basis. Although the arbitrator's decision to reduce Taylor's penalty to a loss of three days' pay could reasonably give rise to an inference that he simply felt the Company's sanction too harsh, this inference standing alone is insufficient to require a remand. *Cf. Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 304 (3d Cir. 1982).

scope of his discretion in fashioning this award. It is well established that arbitrators enjoy substantial latitude in formulating remedies. As the Supreme Court stated:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of the problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361.

 Several courts have enforced arbitral decisions sustaining employee grievances which included an award of less than full back pay. For example, in *Resilient Floor and Decorative Covering Workers Local Union 1179 v. Welco Manufacturing Co.,* 542 F.2d 1029 (8th Cir.1976), the court ruled that an award granting reinstatement and back pay less sixty days' earnings was entitled to enforcement. There, three employees discharged for refusal to work overtime challenged their termination through arbitration. The collective agreement prohibited the arbitrator from, *inter alia,* "modify(ing) 'disciplinary action.'" 542

F.2d at 1031. The court of appeals affirmed a district court judgment granting enforcement of the award. The court ruled that the arbitrator had not exceeded his authority by modifying the discipline imposed, but merely exercised his "discretionary authority to determine how much back pay was appropriate." 542 F.2d at 1033.[4]

In *Lynchburg Foundry Co. v. United Steelworkers of America, Local 2556,* 404 F.2d 259 (4th Cir.1968), the court reversed a district court judgment vacating an arbitral award of reinstatement without back pay. In that case, an employee discharged for failing to keep proper records successfully challenged his dismissal through arbitration. The arbitrator ruled that dismissal under the circumstances of the case was unjust, and thus a violation of the collective agreement. Because the arbitrator found that the employee had engaged in "culpable conduct," however, the arbitrator refused to order payment of back pay. 404 F.2d at 260.

The court of appeals held the award entitled to enforcement. The court reasoned that the collective agreement did not impose an unbending requirement that full back pay be awarded in all cases in which an employee's grievance was sustained, reasoning that an arbitrator has discretion in formulating a remedy.[5]

---

**4.** In reaching its conclusion that the arbitrator had not modified the employer's disciplinary action, the court of appeals in *Resilient Floor* relied in part on the arbitrator's failure to state that the sixty days' pay deduction was a "suspension" in his *award* rather than simply in his *opinion.* Arbitrators, of course are under no obligation to provide written opinions, and thus "it is the award rather than the conclusion or the specific reasoning employed that a court must review." *Schlesinger v. Building Service Employees Union, Local 252,* 367 F.Supp. 760, 764 (E.D.Pa.1973), *quoting American Can Co. v. United Papermakers and Paperworkers,* 356 F.Supp. 495, 499–500 (E.D.Pa.1973). In the present case, the fact that the arbitrator disclosed the punitive nature of the deduction in his award (captioned "decision") as well as in his opinion does not require a different result. The court in *Resilient Floor, supra,* indicated that an arbitrator enjoys discretion in determining the proper amount of back pay. Implicit in that discretion is the recognition that an arbitrator might deny an award of full back pay

on account of employee transgressions not sufficient to constitute a violation of specific company rules. Here, the arbitrator found specifically that Taylor was not insubordinate as alleged by Mead. His subsequent decision to award less than full back pay is therefore not a substitution of his judgment as to an appropriate penalty for that of the Company, but a discretionary refusal to award complete relief to a less than wholly innocent grievant.

**5.** I recognize that the collective agreement in *Lynchburg Foundry Co.* did not contain a provision specifically permitting the employer to discharge employees for committing certain offenses. In cases involving such general just cause provisions, an arbitrator arguably enjoys a somewhat greater degree of discretion in forming a remedy because he or she may pass upon both the evidence of the offense and the reasonableness of the penalty. This does not mean, however, that arbitrators confronting more detailed schedules of penalties may not

The question of contract interpretation here is whether reinstatement with full pay represents the sole remedy for an employee who has suffered an injustice, or whether it merely marks the outer limits within which an arbitrator may fashion a remedy appropriate to the circumstances. In the absence of language evidencing a clear intent to deny the arbitrator any latitude of judgment, the arbitrator is the one to answer this question.

404 F.2d at 261. *See also, Kane Gas Light and Heating Co. v. International Brotherhood of Firemen and Oilers, Local 112, supra,* 687 F.2d at 680 n. 9.

Similarly, in the present case, the arbitrator made no finding that David Taylor engaged in conduct for which Mead could have imposed discipline under the collective agreement. That the arbitrator in his discretion deducted a small portion of Taylor's back pay award because of the impropriety of his outburst does not without more establish that Taylor was guilty of a violation of Mead's Group I Rules. Whether the arbitrator would have ruled that Taylor could have been penalized under the Group I category had the issue been presented to him, is mere speculation.

Therefore, because the arbitrator's decision that David Taylor was not insubordinate drew its essence from the collective agreement, and because his award did not exceed the bounds of permissible discretion, Mead's motion for summary judgment will be denied. Additionally, because the material facts in this case are not in dispute, I will grant in part the Union's motion for summary judgment, and order enforcement of the arbitration award.

■■■ Because I have decided to grant the Union's request for summary judgment, I must now determine whether an award of attorney's fees would be appropriate. In actions to vacate arbitral awards under Section 301 of the Labor Management Relations Act, there is no statutory requirement that attorney's fees be awarded; the successful party must demonstrate that the losing party acted in bad faith. As the Court of Appeals for the Third Circuit stated:

Under the American rule, each party normally must bear the burden of its own legal expenses, including attorneys' fees. One of the narrow exceptions to this rule is a finding that the losing party litigated in bad faith, vexatiously, or for oppressive reasons.

*Mobil Oil Corporation v. Independent Oil Workers Union,* 679 F.2d 299, 305 (3d Cir. 1982) (citation omitted). *See also, Kane Gas Light and Heating Co. v. International Brotherhood of Firemen and Oilers, Local 112,* 687 F.2d 673, 682–683 (3d Cir.1982).

■■■ In the present case, the Union supports its claim for attorney's fees by alleging simply that the Company brought this action without justification and in bad faith. On the record before me, this contention is without merit. In view of the grievant's asserted history of minor offenses and the arbitrator's decision to impose a penalty on Taylor, the Company certainly was justified in attempting to sustain the discharge under its progressive discipline schedule. In addition, the Company was justified in challenging the merits of Arbitrator Strongin's original decision. The arbitration award here challenged by the Company, viewed in light of the arbitrator's description of the grievant's conduct, can only be described as truly surprising. When ordered to end his lunch period and return to work, Taylor informed his supervisor by means of a profane outburst that he would take his lunch whenever he pleased. Although this behavior would appear the epitome of insubordination, the arbitrator interpreted the relevant contractual provision to mean otherwise. While I have recognized the wide latitude generally accorded to arbitral decisions by awarding summary judgment in favor of the Union, I am unable to rule that the Company's chal-

exercise any discretion in forming an award in favor of grievants against whom the arbitrator

has found insufficient evidence of a violation of company rules. *See Resilient Floor, supra.*

lenge to the merits of that award was without justification.[6]

Moreover, the Company has conducted itself in complete good faith in this matter. After being informed of the adverse arbitral decision, the Company did not simply refuse to comply with the award, but promptly initiated this action to obtain judicial review. *Cf. International Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, Inc.,* 707 F.2d 425 (9th Cir.1983). Similarly, there are no allegations that counsel for the Company acted improperly in the course of this litigation. I will therefore deny the Union's request for counsel fees.

### ORDER

This 7th day of October, 1983, it is ORDERED that:

1. Plaintiff's Motion for Summary Judgment on its complaint to vacate the arbitration award is DENIED.

2. Defendant's Motion for Summary Judgment on its counterclaim for enforcement of the arbitration award is GRANTED.

3. Defendant's Motion for Attorney's Fees is DENIED.

---

**6.** Judicial review of arbitral awards in the Third Circuit is extremely limited. In a series of cases beginning with *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3d Cir.1969), the Court of Appeals has construed the Supreme Court's *Enterprise Wheel* decision to require enforcement of arbitration awards except under extreme circumstances. In these decisions, the court has relied upon the national policy favoring arbitration of labor disputes, and has given great weight to the parties' agreement to accept such awards as final.

The wisdom of this approach, however, has not been universally applauded. In two recent concurring opinions, Judge Adams has expressed reluctance concerning the enforcement of questionable arbitration awards under a rule of law that reflects either a "national commitment to arbitration, or perhaps simply ... the inevitable outgrowth of a line of judicial prece-

dent." *Kane Gas Light and Heating Co. v. International Brotherhood of Firemen and Oilers, supra,* 687 F.2d at 683–684 (Adams, J., concurring). *See also, Mobil Oil Corp. v. Independent Oil Workers Union, supra,* 679 F.2d at 305–306 (Adams, J., concurring). In his *Kane Gas Light* concurrence, Judge Adams argued that the solution to this dilemma is the drafting of more precise and less burdensome contractual provisions defining the employer's power of discharge. At issue in that case was a collective agreement permitting discharge of first offenders only upon proof of " 'sabotage,' 'espionage,' or 'deliberate restriction of output.' " 687 F.2d at 684. As the instant case illustrates, however, this solution is only partial because the arbitrator's interpretation of the contract language is itself subject to only limited judicial scrutiny.