**FIRST COMMERCIAL FINANCIAL GROUP, INC., Plaintiff,**

v.

**Michael BAGHDOIAN, Defendant.**

**No. 92 C 4145.**

United States District Court, N.D. Illinois, E.D.

Jan. 26, 1993.

Ted S. Helwig, Paul A. Haskins, Katten, Muchin & Zavis, Chicago, IL, for plaintiff.

William James Bolotin, Phelan, Doyle, Bolotin & Burke, Ltd., Chicago, IL, for defendant.

## ORDER

NORGLE, District Judge.

On April 23, 1992, a three-member arbitration panel (the "Panel") of the National Futures Association ("NFA") awarded defendant Michael Baghdoian ("Baghdoian") $303,000 (the "Award") in response to Baghdoian's claim against plaintiff First Commercial Financial Group, Inc. ("First Commercial"). Pursuant to 28 U.S.C. § 636(b)(1), the court referred First Commercial's complaint to vacate the Award and Baghdoian's motion to confirm the Award to Magistrate Judge Edward A. Bobrick. The Magistrate Judge, after review of the record, issued on December 1, 1992 a 12–page Report and Recommendation (the "Report"). For the following reasons, the Report is adopted.

## FACTS

First Commercial is a registered Futures Commission Merchant ("FCM") engaged in the business of purchasing and selling commodities futures contracts on behalf of public customers, some of whom are contacted through an introducing broker. International Futures Strategists ("IFS") was registered as such an introducing broker pursuant to the Commodity Exchange Act (the "CEA"), 7 U.S.C. § 1 et seq. In September, 1989, a branch manager of IFS contacted Baghdoian and represented that he had access to a system, developed through market research at First Commercial and IFS, for trading Standard & Poors 500 contracts. Baghdoian was told that this trading system predicted daily market movements and produced large profits, and after being assured that any initial funds invested would be secure, Baghdoian agreed to open an account with First Commercial.

During his first month of trading, Baghdoian sustained significant losses to his account with First Commercial. On Friday, October 13, 1989, Baghdoian's account realized a loss of approximately $650,000. After making several payments to First Commercial to reduce the deficit on his account, Baghdoian filed a demand for arbitration before the NFA, which is a self-regulatory organization authorized to oversee members such as First Commercial and to resolve disputes through arbitration.

Subsequent to the Panel's issuance of the Award, First Commercial filed a complaint to vacate the Award in the Circuit Court of Cook County, Illinois. The complaint to vacate alleged that the Panel exceeded its authority in administering the arbitration process and that the award was irrational and re-wrote the contract between the parties. Baghdoian removed First Commercial's complaint to this court and subsequently filed a motion to confirm the arbitration award, claiming that the panel's decision was proper and correct.

Magistrate Judge Bobrick recommended that the court grant Baghdoian's motion to confirm the arbitration award and dismiss First Commercial's complaint to vacate. Both parties have filed objections to the Report, First Commercial objecting to the dismissal of its complaint and Baghdoian objecting to the omission of an award of prejudgment interest. The court has completely reviewed the Report and the arguments of counsel on a de novo standard. 28 U.S.C. § 636(b)(1).

## DISCUSSION

First Commercial's objections to the Report are premised on the Panel's interpreta-

tion of the customer contract between Baghdoian and First Commercial. Specifically, First Commercial claims that the Panel's award is contrary to the express terms of the customer contract, and therefore, the Panel failed to interpret that agreement. First Commercial acknowledges the uphill battle it faces in its efforts to overturn the Panel's award. *See Chameleon Dental Prods., Inc. v. Jackson,* 925 F.2d 223, 225 (7th Cir.1991) ("[t]he chances for a successful appeal of an arbitration award are not particularly good"). Under the Federal Arbitration Act (the "FAA"), the exclusive grounds for vacating an arbitration award are:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. First Commercial contends that the arbitration award must be vacated because the Panel found First Commercial liable as IFS's principal, despite provisions in the customer contract expressly waiving such liability. Therefore, claims First Commercial, the Panel's dismissal of the waiver provision constituted an abuse of its powers as set forth in § 10(d) of the FAA.

■ The presumption of validity traditionally accorded arbitration awards is unavailing where the award disregards and irrationally contradicts the express terms of a contract between the parties. *See Randall v. Lodge No. 1076,* 648 F.2d 462, 467–468 (7th Cir.1981); *Amoco Oil Co. v. Oil, Chem. and Atomic Workers Inter'l Union, Local 7–1, Inc.,* 548 F.2d 1288, 1293–94 (7th Cir.), *cert. denied* 431 U.S.

905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977) ("Only where there is a manifest disregard of the agreement ... may a reviewing court disturb the award"); *Zeigler Coal Co. v. Dist. 12,* 484 F.Supp. 445, 447 (N.D.Ill.1980) (arbitrator exceeds its authority by seeking conflicting definitions outside the record). Paragraph thirty of the customer contract states in part that "[Baghdoian] agrees to indemnify [First Commercial] and hold [First Commercial] harmless from all damages or liability arising from the conduct of [IFS] or [commodity trading advisors]." Because the liability of First Commercial is apparently derived from a principal-agent theory of liability, First Commercial argues that the Panel's award manifests an infidelity to the customer contract. Therefore, First Commercial claims that the Panel went beyond the terms of the contract in reaching its decision, and consequently, the court must set aside and vacate the award. *See Flender Corp. v. Techna–Quip Co.,* 953 F.2d 273, 278 (7th Cir.1992) (court will vacate arbitration award if arbitrator goes beyond terms of contract to reach its decision); *Roadmaster Corp. v. Production Maintenance Employees' Local 504,* 851 F.2d 886, 889 (7th Cir.1988).

■ The question to be answered in determining whether the panel's arbitration award may be reversed is whether the panel interpreted the customer contract. *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers,* 802 F.2d 247, 253 (7th Cir.1986). So long as the Panel interpreted the contract in making its award, the award must be affirmed, even if the interpretation is in error. *Hill v. Norfolk & Western Ry. Co.,* 814 F.2d 1192, 1995 (7th Cir.1987). However, where an arbitrator ignores rather than misinterprets a contract, it exceeds it's powers and, pursuant to 9 U.S.C. § 10(d), the award should be vacated. *Chicago & Northwestern Transp. Co. v. United Transp. Union,* 905 F.2d 171, 173 (7th Cir. 1990). First Commercial claims that the Panel ignored paragraph thirty of the customer contract and, thus, objects to the Report's conclusion that the panel ade-

quately interpreted the contract's provisions.

■ Paragraph thirty is an exculpatory clause purporting to relieve First Commercial of liability for damages caused by its agents for which it would otherwise be responsible, and, as such, it must be strictly construed. *See United States v. Seckinger,* 397 U.S. 203, 210–13, 90 S.Ct. 880, 884–86, 25 L.Ed.2d 224 (1970); *Cange v. Stotler & Co.,* 826 F.2d 581, 592 (7th Cir. 1987). In general, a commodities brokerage firm, such as First Commercial, has a duty to supervise its retail agents and cannot contract away that supervisory role to another party. *See Commodities Futures Trading Comm'n v. Commodities Fluctuations Sys., Inc.,* 583 F.Supp. 1382, 1384–1385 (S.C.N.Y.1984). Under *Rosenthal & Co. v. Commodity Futures Trading Comm'n,* 802 F.2d 963 (7th Cir.1986), commodity brokerage firms cannot avoid liability for violations of the Commodity Exchange Act by their agents acting within the scope of their employment. 7 U.S.C. § 4 (imposing respondeat superior liability upon FCMs for acts proscribed by the Act). Moreover, exculpatory clauses signed prior to the initiation of trading are unenforceable. *Cange,* 826 F.2d at 593.

Section 4 of the CEA contains Congress's explicit statement that the FCM should be liable for all acts of its agents within the scope of their agency. Congress's decision to hold an FCM responsible for the risk of loss from acts of its agents could be attributable to a Congressional judgment that an FCM is in a better position than its customers to police the activities of the agents, or that an FCM faces less risk costs or can spread losses more effectively than customers. *See Cange,* 826 F.2d at 594. Regardless of the Congressional intent behind § 4, the strong public policy in favor of a private right of action to enforce the CEA counsels against upholding paragraph thirty as a prospective waiver of the CEA's provision for respondeat superior liability. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 637, 105 S.Ct. 3346, 3359, 87 L.Ed.2d 444 (1985) (prospective waiver of party's right to pursue statutory remedies for antitrust violations condemned as against public policy).

■ In its apparent disregard of paragraph thirty, the Panel did not exceed it powers; to the contrary, had the Panel enforced the waiver of First Commercial's respondeat superior liability, it's disregard of § 4 of the CEA would have afforded statutory grounds to vacate whatever decision it would have reached. Because the law of this jurisdiction required the Panel to depart from the waiver embodied in paragraph thirty, the Panel cannot now be found to have exceeded its powers. The issue of First Commercial's liability as principal for the acts of IFS was before the Panel and appears to be the basis of the arbitration award. The Magistrate Judge found that First Commercial failed to demonstrate any grounds for vacating the Panel's award, and the court agrees. Accordingly, the Report is adopted and First Commercial's complaint to vacate is dismissed.

■ In his motion to confirm the arbitration award, Baghdoian requests that the court include prejudgment interest in the judgment confirming the arbitration award. Although the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* applies to the parties' dispute, the Arbitration Act does not create any independent federal question jurisdiction under 28 U.S.C. § 1331. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). The court's jurisdiction is thus based upon diversity of citizenship. 28 U.S.C. § 1332. In general, state law determines the rate of prejudgment interest in diversity actions. *See Northrop Corp. v. Triad Intern. Mktg.,* 842 F.2d 1154, 1155 (9th Cir.1988); *Weitz Co. v. Mo–Kan Carpet, Inc.,* 723 F.2d 1382, 1387 (8th Cir.1983); *Jarvis v. Johnson,* 668 F.2d 740, 746–47 (3d Cir. 1982). Under Illinois law, interest is allowed on arbitration awards as well as on judgments. *Wrobel v. Argiris,* 73 Ill. App.3d 648, 649, 30 Ill.Dec. 26, 392 N.E.2d 681 (1979). The relevant statute provides in pertinent part that: "When judgment is entered upon any award ... interest shall

be computed at the above rate [9% per annum], from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment." 735 ILCS 5/2–1303. Since April 23, 1992, First Commercial has enjoyed the use of $303,000, which is the amount that the Panel awarded Baghdoian. Therefore, having adopted the Magistrate Judge's recommendation to confirm the Panel's award, the court grants Baghdoian prejudgment interest on the $303,000 award at the rate of 9% per annum from April 23, 1992.

## CONCLUSION

The court adopts the recommendations contained in the Report, thereby dismissing First Commercial's complaint to vacate the arbitration award and granting Baghdoian's motion to confirm the Panel's award of $303,000. The court also grants Baghdoian prejudgment interest on the award at the statutory rate of 9% per annum.

IT IS SO ORDERED.