William L. SMITH, et al.,
Plaintiffs–Appellants,

v.

ABS INDUSTRIES, INC.,
Defendant–Appellee.

No. 88–3796.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1989.

Decided Dec. 1, 1989.

Rehearing and Rehearing En Banc
Denied Jan. 22, 1990.

William T. Payne (argued), United Steelworkers of America, Pittsburg, Pa.; Melvin S. Schwarzwald, Kathleen M. Kordeleski, Schwarzwald, Robiner, Levin & Rock, Cleveland, Ohio, for plaintiffs-appellants.

Paul J. Corrado, Cleveland, Ohio, Gregory L. Hammond (argued), Hammond & Associates, Akron, Ohio, for defendant-appellee.

Before KEITH and WELLFORD, Circuit Judges; and GILMORE, District Judge *.

KEITH, Circuit Judge.

Plaintiffs, nine former employees of the Ashtabula Forge Division of ABS Industries, Inc. or of Ashtabula Forge, Inc. (hereinafter collectively referred to as "ABS") who had retired or otherwise left ABS prior to the closing of its Ashtabula Forge plant where they had been employed, appeal from the granting of summary judgment in favor of ABS in this action filed pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and § 502 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Plaintiffs argue that the collective bargaining agreement granted vested health and welfare retirement benefits to plaintiffs, and that these benefits were improperly terminated by ABS. The district court concluded that these benefits were not vested and were properly terminated pursuant to the provisions of the plan. We REVERSE.

I.

At the time of the closing of the Ashtabula Forge plant, relations between employees and management were severed by a collective bargaining agreement in force between 1981 and 1984. Section 21 of the

---

* The Honorable Horace W. Gilmore, U.S. District Judge for the Eastern District of Michigan, sitting by designation.

collective bargaining agreement is entitled "Social Insurance;" § 21.01 provides, in pertinent part, that "[t]he program of insurance benefits for all employees is attached hereto as Appendix B." Paragraph 8 of Appendix B states that "[a]ll eligible, retired employees shall be included for benefits as described in the program Insurance Benefits for Pensioners, dated September 16, 1975." However, the document referred to in Paragraph 8 appears to be missing; therefore, the only description of the plan is a booklet entitled "Hospital–Medical Plan."

The following definitions are set forth in the booklet:

ELIGIBLE EMPLOYEES

All full-time employees of the company who have completed the probationary period of forty-two (42) days worked.

COVERED PERSON

An employee of the company who meets the requirements of an eligible employee, and his eligible dependents.

In the section titled "Eligibility and Effective Date of Coverage," under the subheading "Retirement," the booklet provides that:

Benefits will continue for retirees who are eligible for Pension Benefits and their eligible dependents except that no benefits are payable for:

1) Accidental Death & Dismemberment;

2) Optional Life Insurance; or

3) Weekly Disability.

In addition,

1) life insurance benefits shall be reduced ½ the amount listed on page 13;

2) there is no provision for continuation of coverage as the result of disability; and

3) all benefits are subject to Coordination of Benefits with Medicare as described on page 37.

The next major section of the booklet, entitled "Individual Termination of Coverage," provides that:

The coverage of any Covered Person under the Plan shall terminate on the earliest of the following dates:

1) the date of termination of the Plan;

2) the date employment terminates for reasons other than layoff, leave of absence, disability, retirement or death of the employee;

3) with respect to an Eligible Dependent, the date coverage terminates for the Eligible Employee or the date such dependent no longer meets the qualifications of a [sic] Eligible Dependent;

4) the date all coverage or certain benefits are terminated on a particular class by modification of the Plan; or

5) the date a Covered Person becomes a full-time member of the Armed Forces of any country.

Several of the retirees testified that company officials represented to them at the time of their exit interviews that their benefits would last throughout their lifetime. Typical of this testimony was that of John Mooney, who told of his interview with then President Poster McKinnon:

[Mr. Mooney]: [President McKinnon] said, "You know, John, once you go out that door, you got nothing to worry about, you are not retired until you get out that door." He said, "And you'll carry your life insurance up until you are 65. Then it will be cut in half at the age of 65."

"Your hospitalization," he said, "You got nothing to worry about as long as you live," ... and "You will enjoy your pension," and that was it.

[Question]: Then you walked out the door?

[Answer]: Shook hand[s] with him, walked out the door.

[Question]: With nothing to worry about?

[Answer]: Yes. And I believed him. He was the president of that Company.

Read strictly, the Definitions section appears to exclude retirees as Covered Persons because one must be an Eligible Employee, and one must be an Eligible Employee to be a Covered Person. However, upon evaluating the above provisions in conjunction with each other and with other sections of the booklet, the district court

noted what it perceived as inconsistencies if retirees were not either Eligible Employees or Covered Persons, and therefore concluded that retirees were Covered Persons with terminable benefits:

The first inconsistency occurs in the section entitled "ELIGIBILITY AND EF-FECTIVE DATE OF COVERAGE." The first sentence states that "[A]ll eligible employees who are enrolled on the effective date of the Plan will be covered on that date, provided they are actively working." Looking back to the definition of eligible employee, it is clear that to be an eligible employee one must be a full-time employee. Full-time employees are normally actively working, so in order for that sentence to not be redundant, eligible employees must include those employees not actively working. In and of itself, this proviso makes logical sense. In fact, two paragraphs later, the plan states "Any employee who is not actively working on his effective date because of medical disability ..." Thus, eligible employees must *also* include at least those employees who are not working because of disability.

This "eligibility" section has a subsection entitled "COVERAGE IN THE EVENT OF:," which then has various sub-sub-sections. The first of these is a paragraph titled *"Rehired or Reinstated Employee,"* in which the plan states that the waiting period (the Court assumes that this is the 42 day probationary period) is waived if "the Eligible Employee had been employed for at least forty-two (42) days." To be consistent with the definition of eligible employee quoted above, this paragraph should read "otherwise Eligible Employee." Because it does not, the language implies that an eligible employee, at least for some purposes, includes an employee who had been laid off. The very next paragraph speaks to employees on lay-off, and states that the benefits of the plan may continue for six months after lay-off if the employee makes some contribution to the plan. Thus, under this second paragraph, it is clear that a laid-off employee is not entirely an eligible employee, or

perhaps, more accurately, a covered employee; i.e., he is not eligible for all of the benefits of a full-time employee.

The next paragraph states that "Coverage shall terminate immediately in the event of a strike." The language of this is absolute; it does not even state that coverage shall terminate in the event the employee strikes. A strict reading of this paragraph, then, would have it apply to *all* persons covered by the plan. Although ABS has not argued for this interpretation, it further evinces the rather loose way in which this booklet was written.

The following paragraph is titled *"Disability,"* and states "If an Eligible Employee is totally disabled ..." Again, using the definition of eligible employee set forth above, an eligible employee cannot be totally disabled, for then he is not working full-time; an eligible employee can only *become* disabled. Again, the Court reads this paragraph as evidence that eligible employees may include those not currently working. The paragraph goes on to state that coverage will continue for two years, and then "may be continued, subject to the payment of appropriate contributions by the employee," until the employee retires or recovers from his disability. This last line thus contemplates the continuation of benefits until retirement, at which time different rules go into effect. The Court admits that this is some evidence that retiree benefits may be vested; in the context of the other language in this contract, however, the Court finds that this implication is slight indeed.

The next paragraph is one of those directly at issue. Titled *Retirement,* it states that "Benefits will continue for retirees who are eligible for Pension Benefits and their eligible dependents...." It then states certain limitations on the benefits available. The Court notes yet another inconsistency. An eligible dependent is defined as a dependent of an eligible employee; thus, a retired employee cannot have eligible dependents unless he or she is an eligible employee.

The Court concludes from a reading of the section "ELIGIBILITY AND EFFECTIVE DATE OF COVERAGE," that although the term "Eligible Employee" is defined as a full-time employee who has completed the probationary period, for some purposes it also includes those employees who were full-time workers but who are now disabled, on lay-off or retired. Again, however, this is not the end of the discussion.

The next major section is entitled "INDIVIDUAL TERMINATION OF COVERAGE," and states as follows.

The coverage of any Covered Person under the plan shall terminate on the earliest of the following dates:

1) the date of termination of the Plan;

2) the date employment terminates for reasons other than layoff, leave of absence, disability, retirement or death of the employee;

3) with respect to an Eligible Dependent, the date coverage terminates for the Eligible Employee or the date such dependent no longer meets the qualifications of a [sic] Eligible Dependent;

4) the date all coverage or certain benefits are terminated on a particular class by modification of the Plan; or

5) the date a Covered Person becomes a full-time member of the Armed Forces of any country.

If a disabled, laid-off or retired employee is still an eligible employee, he is thus a covered person. Plaintiffs argue that if a retired employee was a covered person then subsection 2 would not be necessary. The Court disagrees. Although subsection 2 could be better worded, its meaning is fairly clear: if an employee is fired, or quits, he is no longer eligible for benefits. That the plan states this as terminating employment and then lists the exceptions is merely a method of ensuring completeness, of ensuring that a method of termination which should not continue the benefits is not inadvertently omitted. The Court finds it significant that all of the exceptions listed in subsection 2 are listed in the previous eligibility section, and in the same order.

Subsection 3 yields further evidence of why disabled, laid-off and retired employees should be considered eligible employees. The coverage for eligible dependents terminates when the coverage for the eligible employee terminates. If the Court ignores the definitional problem associated with eligible dependents, mentioned above, and thus assumes that a retired employee is not an eligible employee and yet can have eligible dependents, then subsection four, the only subsection which deals with eligible dependents, states that the coverage for an eligible dependent ceases when the coverage for the eligible employee ceases. Yet if retired employees are not eligible employees, the coverage for their eligible dependents does not cease when the coverage for the retirees themselves ceases. This is clearly an incorrect result. As with the above paragraphs, a rational reading of this subsection occurs only if a retired employee comes within the definition of eligible employee.

Perhaps the strongest evidence that the term "Covered Employee" specifically includes retirees is presented in the later section entitled "MEDICARE BENEFITS." That section begins "If a Covered Person becomes eligible for Medicare Benefits, ... the Plan will coordinate benefits with Medicare, which will be considered the Primary Plan." The second paragraph is as follows: *"Retirees under age 65* Benefits for retirees under 65 years of age shall be continued in full under the Plan until they become eligible for Medicare, except that no benefits are payable for Weekly Disability."

It is patently clear that the second paragraph, using the term retirees, refers to the same people as does the first paragraph, using the term [c]overed person, and describes the benefits they will receive before age 65 as opposed to after it. The Court concludes that the term [c]overed [p]erson includes retirees.

Finally, the Court relies on the plain meaning of the words in question. A

covered person usually means exactly that, a person who is covered by the plan in question. There is no reason for the plan to consider eligible employees covered persons, but not retirees or disabled employees, or those on lay-off.

Further, although plaintiffs' argument as to the vesting of retiree benefits is consistent with their argument that retirees are not covered persons, the Court finds it strange, to say the least, that a provision as important as the vesting of benefits should arise only by implication from the interplay between the definition of covered person and the section on the individual termination of coverage which uses the term covered person rather than, for example, employee (which in other contexts in the plan seems to refer to both current and former employees).

Given the inability of the plan to avoid some internal definitional inconsistency and given what, to the Court, is the obvious meaning of each of the paragraphs of the plan wherein the term "eligible employee" on its face means more than simply a full-time employee but also includes disabled, laid-off or retired employees (depending on the paragraph), and given the plain meaning of covered person-a person who is eligible for benefits under the plan, the Court concludes that for the purpose of the section entitled "INDIVIDUAL TERMINATION OF COVERAGE," retired employees and their eligible dependents are included within the meaning of the term "Covered Person."

The plan clearly states that the benefits of a covered person terminate on the date the plan terminates. Therefore, the plan benefits for covered persons are not vested and may be terminated pursuant to the provisions of the plan.

*Memorandum and Order* at 8–16.

## II.

As the district court noted, "[t]here is no question that this plan could have been more precise." *Memorandum and Order* at 14. Given this impression, we are faced, as was the district court, with the task of making sense of a plan with inconsistencies which confuse the otherwise clear import of the definitional section. In *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Yard–Man, Inc.*, 716 F.2d 1476 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), this court discussed some of the factors to be taken into account when attempting to discern the intent of the parties in the collective bargaining context:

Many of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements. For example, the court, should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. [*Kellogg Co. v. NLRB*, 457 F.2d 519, 524 (6th Cir.1972)]. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. *See Randall v. Lodge No. 1076, International Ass'n of Machinists and Aerospace Workers, AFL–CIO*, 648 F.2d 462 (7th Cir.1967); *Forest Industries, Inc. v. Local Union No. 3–436, International Woodworkers of America, AFL–CIO*, 381 F.2d 144, 146 (9th Cir.1967); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 570, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403 (1960) (Brennan, J., concurring). The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties. *Kellogg Co., supra,* 457 F.2d at 524. *See Randall, supra,* 684 F.2d at 466; *Florida Canada Corp. v. Union Carbide & Carbon Corp.*, 280 F.2d 193 (6th Cir.1960). As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises. *See Cordovan Associates, Inc. v. Dayton Rubber Company*, 290 F.2d 858, 861 (6th Cir.1961). Where ambiguities exist, the court may look to other words and

phrases in the collective bargaining agreement for guidance. Variations in language used in other durational provisions of the agreement may, for example, provide inferences of intent useful in clarifying a provision whose intended duration is ambiguous. [See *Upholsterers' International Union v. American Pad & Textile Co.*, 372 F.2d 427, 428 (6th Cir.1967)]; *Kellogg Co., supra*, 457 F.2d at 524. Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy. This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretation rendered not denigrate or contradict basic principles of federal labor law.

*Yard–Man*, 716 F.2d at 1479–80. *Yard–Man* is also instructive as to the evaluation of intent in the particular context of retiree benefits:

Further, retiree benefits are in a sense "status" benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained. Thus, when the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree. This is not to say that retiree insurance benefits are necessarily interminable by their nature. Nor does any federal labor policy identified to this Court presumptively favor the finding of interminable rights to retiree insurance benefits when the collective bargaining agreement arose, the nature of such benefits simply provides another inference of intent. Standing alone, this factor would be insufficient to find an intent to create interminable benefits. In the present case, however, this contextual factor buttresses the already

sufficient evidence of such intent in the language of this agreement itself.

716 F.2d at 1482.

Based on these considerations, we conclude that the district court erred in holding that the retiree benefits were not vested. First, as the district court noted, the definitional section of the booklet does distinguish retirees from covered persons. Second, in the "Retirement" section, the booklet states that "Benefits will continue for retirees...." Third, the booklet contains specific durational language in the case of laid-off and disabled workers:

*Layoff and Leave of Absence*

Coverage shall be continued to the end of the month following the month in which layoff occurs or leave of absence begins. All benefits of the Plan (except Weekly Disability Benefits) may be continued for six (6) additional months, subject to the payment of appropriate contributions by the employee. Coverage will again become effective on the date the employee returns to active employment.

*Strike*

Coverage shall terminate immediately in the event of a strike.

*Disability*

If an Eligible Employee is totally disabled, medical coverage shall be continued (except Weekly Disability Benefits) for a period of two (2) years from the date total disability commenced. Medical coverage may be continued, subject to the payment of appropriate contributions by the employee, until he:

1) reaches age 65 or retires; or

2) recovers from his disability, whichever first occurs.

Fourth, the extrinsic evidence of intent-specifically, the representations made to employees that their benefits would continue for their lifetimes-supports the conclusion that these retiree benefits were intended to last beyond the termination of the plan.[1]

---

1. Several ABS retirees testified that ABS officials made representations to them indicating that they would receive life-long retiree benefits.

Even though the testimony of the ABS retirees may be deemed extrinsic evidence, our decision to consider the testimony is justified by this

Accordingly, the judgment is RE-VERSED.

WELLFORD, Circuit Judge, dissenting.

The district court in this case held that the plaintiffs who had retired had no vested welfare benefits under the applicable ERISA plan and that defendants were entitled to terminate those benefits. The court reached this decision after studying the plan and the evidence in the case, including all the extrinsic evidence. I find that the district court's decision that the retirees welfare benefits were terminable corresponds with the plan documents, the history of handling benefits under the plan and the actions of the parties, and I therefore would affirm the grant of summary judgment to defendants on the issues raised in this case. Judge Keith acknowledges that the definitions section of the plan would exclude retirees such as plaintiffs as covered persons entitled to vested benefits because, plainly, it provides that one must be a full-time employee to be eligible or "covered" for the benefits plaintiffs seek. Because of other inconsistencies retired persons were even considered eligible.

The district court found that the plan "clearly states" that benefits terminate on the date the plan terminates and thus "plan benefits for covered persons are not vested and may be terminated." It further found the plan to be part of the labor agreement between defendants and their employees, and that the agreement and the plan may be reconciled to provide the intended meaning "that even if the plan or agreement is terminated, benefits will continue ... except that if the fund would not have enough money to pay all the benefits, none of the benefits will be paid." The district court then concluded "if ABS terminates the plan, and has funded it properly, its liability ceases." [1] I would find no error in this interpretation. I do not find the cited language from *United Auto. Workers v. Yard–Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), to indicate otherwise. *See In re White Farm Equip. Co.*, 788 F.2d 1186 (6th Cir.1986); *Musto v. American Gen. Corp.*, 861 F.2d 897 (6th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598 (7th Cir.1989), all of which I find to support the district court's decision.

I therefore DISSENT from the opinion reversing the district court judgment.

court's recent decision in *International Union, UAW Local 91 v. Park–Ohio Industries, Inc.*, 876 F.2d 894 (6th Cir.1989) (unpublished per curiam). In *Park–Ohio Industries*, the union argued that the employer had failed to pay retirement and health insurance benefits mandated by the collective bargaining agreement. To aid in the interpretation of the collective bargaining agreement, this court considered the parties' extrinsic evidence, reasoning that:

> [B]oth parties have offered plausible interpretations of the agreement drawn from the contractual language itself [which] demonstrates that the provision is ambiguous. Neither of the two proffered interpretations is frivolous nor unreasonable on its face, and

inquiry should be permitted into extrinsic circumstances. *See Strauss v. Silvercup Bakers, Inc.*, 353 F.2d 555, 558 (2d Cir.1965).

*Park–Ohio Industries*, 876 F.2d 894. Similarly, in the case at bar, both ABS and the plaintiffs have presented plausible interpretations of the contractual language of the retiree benefits plan. Thus, extrinsic evidence may be properly introduced to resolve the ambiguity. *See id.; International Union, UAW Local 134 v. Yard–Man, Inc.*, 716 F.2d 1476, 1480 (6th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

1. The district court noted that this would follow "once ERISA allowed it to do so."