Ralph C. **HUGHES,** et al., **Plaintiffs,**

v.

**CITY OF NORTH OLMSTED,**
et al., **Defendants.**

No. 1:94CV1312.

United States District Court,
N.D. Ohio,
Eastern Division.

May 3, 1995.

David B. Malik, Cleveland, OH, Dennis J. Niermann, Edward G. Kramer, Kramer & Niermann, Cleveland, OH, for plaintiffs.

Hilary S. Taylor, Patrick Mark Dana Dukes, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, James M. Dubelko, Careau & Dubelko, North Olmstead, OH, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Defendants City of North Olmsted (the "city"), its Chief of Police, Dennis Sefcek, Captain George Ruple, Lieutenants Barry O'Toole and Frank Viola, Sergeant Robert Flynn, and various John Does (collectively the "defendants"), move this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Rules"). Plaintiffs Ralph and Sharon Hughes oppose this motion and move pursuant to Rule 56(f) for additional time to conduct discovery. For the reasons stated below, the motion for summary judgment is granted as to John Does III and IV and the City, and denied with respect to all other defendants. Plaintiffs' Rule 56(f) motion is denied.

## I.

Ralph Hughes is employed by the City as a police officer. It is undisputed that in 1993, the North Olmsted Police Department conducted an internal affairs investigation of Hughes, who at the time was a probationary employee. Hughes alleges that he was investigated by internal affairs for an alleged "swinging" lifestyle and open marriage. Defendants allege that they investigated Hughes because they received a charge of sexual harassment involving Hughes, because of a report that Hughes was dating the mother of a gang member, and because of allegations that while on duty Hughes had bragged that he had an open marriage and a "swinging" lifestyle.

It is not disputed that during the course of the investigation, defendants interviewed each of the Hughes. Defendants claim that they interviewed Ralph Hughes to inform him of the allegations against him and to inform him of his departmental rights. According to Viola, Hughes told him that he and his wife were separated, denied that he dated a gang member's mother, denied that he had used his position to meet women and denied the sexual harassment charges. Viola also claimed that he interviewed Sharon Hughes to verify Ralph Hughes' statements, including statements concerning job stress and the Hughes' separation.

The Hughes, however, claim that Viola and another officer interviewed Ralph and Sharon individually concerning Ralph's sexual life and off-duty activities. Ralph acknowledged that he spoke with Sefcek concerning an investigation, but claims that no one in the police department ever informed him that he was the subject of a sexual harassment investigation. Sharon Hughes claims that Viola and another officer asked her whether her husband was dating anyone. Sharon also claims that Viola told her that he asked the questions because there were rumors that she and her husband were "swingers" and had an open marriage.

The Hughes claim that the investigation violated their constitutional rights to privacy and free association. The Hughes also contend that the police department failed to properly train its police officers to conduct internal affairs investigations and, therefore, had policies and standards that permitted an unconstitutional investigation. The Hughes claim that John Does III and IV were involved in the making of the policies that allow investigations to be conducted. The Hughes allege that Sefcek is responsible for the improper training, and initiated the investigation of Ralph Hughes, and that Ruple approves internal investigations, including the investigation of the Hughes. The Hughes contend that O'Toole supervised the investigation of the Hughes. The Hughes allege that Viola and Flynn conducted the investigation in question. Additionally, the Hughes contend that John Does I and II defamed them.

Ruple, Sefcek, O'Toole, Viola and Flynn move for summary judgment asserting that they are protected from civil suit by the doctrine of qualified immunity. The city moves for summary judgment asserting that it cannot be held liable under the doctrine of respondeat superior. In a supplemental brief the defendants, the City of North Olmsted, O'Toole, Viola, Sefcek, Ruple and Flynn, allege that the Hughes' defamation and negligence claims are preempted by § 301 of the Labor Relations Act.

## II.

Rule 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

The nature of materials properly presented in a summary judgment pleading is set forth in Rule 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or

opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing a summary judgment motion, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n., Inc.,* 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.,* at 252, 106 S.Ct. at 2512.

## III.

### A. *Qualified Immunity*

██ 42 U.S.C. § 1983 provides in part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

The doctrine of qualified immunity stands as a general bar to actions against public officials in their individual capacities: "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This immunity extends to police officers sued under § 1983. *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir.1992). *See also Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

██ Qualified immunity, as the term suggests, is not absolute; "qualified immunity would be defeated if an official *'knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis in original). When a defendant raises the issue of qualified immunity in the context of a summary judgment motion, the plaintiff "must allege facts sufficient to indicate that the act in question violated clearly established law." *Russo,* 953 F.2d at 1043 (6th Cir.1992). *See also Rich v. City of Mayfield Hts.,* 955 F.2d 1092, 1095 (6th Cir.1992); *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987). Whether the defendant's conduct violated clearly established rights is purely a question of law. *Id.; Russo,* 953 F.2d at 1043.

██ In order to determine whether a right was clearly established at the time the official is alleged to have violated it, the court must not to look to broad statements of rights but rather to whether the precise conduct in question has been clearly determined

to be unlawful. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus,

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, [citations omitted] . . . but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Id.,* 483 U.S. at 640, 107 S.Ct. at 3039.

 While a police department may inquire into an employee's private conduct when the conduct impacts upon the employee's public duties, an investigation of the private sexual life of a police officer violates the officer's constitutional rights if the matter being investigated does not have some impact on the police officer's job performance. As a matter of law, therefore, it is clearly established that a public employer commits a constitutional violation when the employer inquires into the private activities of a public employee when the matter is unrelated to the individual's job performance. *See, e.g., Briggs v. North Muskegon Police Dept.,* 563 F.Supp. 585 (W.D.Mich.1983), *aff'd,* 746 F.2d 1475 (6th Cir.1984), *cert. denied,* 473 U.S. 909, 105 S.Ct. 3535, 87 L.Ed.2d 659 (1985); *Shuman v. City of Philadelphia,* 470 F.Supp. 449 (E.D.Penn.1979). Accordingly, because the right is clearly established and a reasonable employer would understand that the investigation violates the right, an employer may not invoke qualified immunity when the employer investigates matters unrelated to the employee's public duties.

 It also is without question that a public employer may (and presumably must) investigate claims of sexual harassment leveled against public employees. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., demands that employers take appropriate steps to ensure that the workplace is free of sexual harassment. To that end, a public employer may investigate an employee's off-duty conduct, but only to the extent that the conduct impacts the employee's public duties or relates to the employer's duty to maintain a work environment free from sexual harassment. An employee's off-duty conduct which does not impact the employee's public duties or the employer's obligation to maintain a work environment free from sexual harassment is beyond the scope of any employer's legitimate interests.

 Even if the defendants in this case enjoyed a qualified privilege to investigate claims of sexual harassment against Ralph Hughes, the defendants did not enjoy a qualified privilege to investigate the Hughes' marital understandings or alleged lifestyles, unless they related to Hughes' job performance or the defendants' obligations to maintain a work environment free from sexual harassment. According to the Hughes' complaint and relevant affidavits, the police department's investigation inquired into areas of the Hughes' private and sexual life. The Hughes offered significant probative evidence that Sharon Hughes was asked if her husband was "seeing" anyone. Moreover, the Hughes have offered sufficient evidence that Sharon Hughes was told by Viola that he asked the question because there were rumors that the Hughes' had an "open" or swinging relationship.

Defendants have failed to explain or to offer any evidence how a "swinging" lifestyle was at all related to Ralph Hughes' job performance, or otherwise implicated the work environment. Absent additional evidence, the nature of Ralph and Sharon Hughes' off-duty activities, marital understanding or alleged "swinging" lifestyle is of no consequence to the defendants' legitimate interests; any investigation concerning the Hughes' private lives, therefore, violated their clearly established constitutional rights of privacy and free association. Consequently, the defendants are not entitled to qualified immunity, and their motion for summary judgment is denied.

**B.** *Respondeat Superior*

 Generally, a municipality is not liable for the acts of its agents under a theory of respondeat superior. *Monell v.*

*Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Berry v. City of Detroit,* 25 F.3d 1342, 1348 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995). A municipality may be liable, however, if a constitutional violation results from its agents acting pursuant to an established municipal policy or custom.

 In order for the municipality to be liable, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). *See also Collins v. City of Harker Hts.,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Liability is "limited to action for which the municipality is actually responsible[,]" in other words for "acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). In some instances, inadequate training may be enough to constitute municipal policy. *City of Canton,* 489 U.S. at 388, 109 S.Ct. at 1204. A municipality can only be held liable for inadequate training if the failure to train is a result of "deliberate indifference" which leads to a constitutional violation. *Id.* A plaintiff does not establish deliberate indifference by merely alleging that one officer is inadequately trained. *Id.,* at 390, 109 S.Ct. at 1205–1206. It is also not enough to show that the incident at issue would not have happened if employees were properly trained because even adequately trained employees make mistakes. *Id.* In order to establish that a municipality was deliberately indifferent to an individual's constitutional rights, the plaintiff must prove that the deficiency in training actually caused the constitutional violation. *Id.,* at 391, 109 S.Ct. at 1206.

 The Hughes allege that the municipality had an established custom of allowing improper and overly broad investigations and that police officers were improperly trained to conduct internal affairs investigations. The Hughes assert that John Does III and IV were involved in creating the unconstitutional policies of the municipality. Other than the alleged violation at issue in this case, the Hughes do not allege specific facts demonstrating the city's deliberate indifference to the constitutional rights of individuals who are the subject of internal investigations; however, the Hughes do claim, pursuant to a Rule 56(f) motion, that they need additional discovery to obtain facts to respond to the motion for summary judgment.

Rule 56(f) provides in relevant part:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit ... discovery to be had....

 Although Rule 56(f) provides that a court may refrain from ruling on a summary judgment motion when it appears that the party opposing the motion needs additional discovery to justify its position, the party opposing the summary judgment motion "possesses no absolute right to additional time for discovery under Rule 56[.]" *Emmons v. McLaughlin,* 874 F.2d 351, 356 (6th Cir.1989). *See also Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1240 (6th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981).

Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of act.

*Emmons,* 874 F.2d at 356 (quoting *Willmar Poultry Co. v. Morton–Norwich Prod., Inc.,* 520 F.2d 289, 297 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)). The party seeking the Rule 56(f) order must demonstrate by appropriate evidence why he is unable to oppose a motion

for summary judgment and "how postponement of a ruling on the motion would enable him to rebut ... [a] showing of the absence of a genuine issue of fact." *Id.* at 357. Mere speculation that additional discovery will lead to facts supporting an allegation cannot withstand a motion for summary judgment.

Nowhere in the Hughes' affidavit, complaint, or Rule 56(f) motion, do they allege specific facts they expect to discover that would lead to a finding of municipal liability, or which would otherwise support their claim that the city's failure to train its officers constituted deliberate indifference to the constitutional rights of individuals subject to internal investigations. Other than the single alleged incident of a constitutional violation, the Hughes do not point to sufficient particularized information to warrant a Rule 56(f) order. The Hughes motion, therefore, is denied.[1] Hence, because defendants have demonstrated that there is no material issue of fact in dispute as to the city's liability for the acts of its agents, the Court grants defendants' motion for summary judgment as to the defendant city and John Does III and IV.

## C. *Section 301 Preemption of State Claims*

Defendants assert that they are entitled to summary judgment on the state claims of defamation and negligence because the claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which governs contracts between an employer and a labor union.

The parties agree that Hughes was a probationary employee at the time of the investigation, but disagree as to whether Hughes' employment was governed by the collective bargaining agreement between the city and its police officers. Hughes alleges that probationary employees are not subject to the collective bargaining agreement. The defendants allege that all matters concerning internal investigations are controlled by the collective bargaining agreement, regardless of whether they involve a probationary employee or not. Because the collective bargaining agreement provides a grievance procedure with final and binding arbitration, if the collective bargaining agreement and its grievance and arbitration procedure covers probationary employees, Hughes' state law claims are preempted by Section 301.

Contract interpretation is a question of law. *Cincinnati Gas & Elec. Co. v. Federal Energy Regulatory Comm'n,* 724 F.2d 550, 554 (6th Cir.1984). Generally, a court interprets a collective bargaining agreement by focussing on the language contained in the agreement. *Smith v. ABS Industries, Inc.,* 890 F.2d 841, 845 (1989).

> [T]he court should interpret each provision in question as part of the integrated whole. If possible each provision should be construed consistently with the entire document and the relative positions and purposes of the parties.

*Id.* (quoting *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Yard–Man, Inc.,* 716 F.2d 1476, 1479 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

In the instant case the parties have not provided this Court with the entire contract in question. Each party included only portions of the collective bargaining agreement. This court cannot interpret the meaning of the provisions in question without considering the collective bargaining agreement as a whole. Hence, the Court denies defendants' motion for summary judgment as to the Hughes' state law claims, and orders the parties to file a complete copy of the collective bargaining agreement by May 22, 1995.

## IV.

In sum, this Court grants summary judgment in favor of the City of North Olmsted and John Does III and IV, denies the motion for summary judgment as to all other defendants, denies plaintiffs' Rule 56(f) motion (doc. # 15), and orders the parties to file a

---

1. Because the Court denies defendants' motion for summary judgment as it relates to the defendants' claim of qualified immunity, the Court correspondingly denies as moot the Hughes' motion for additional discovery to respond to defendants' claim of qualified immunity.

complete copy of the collective bargaining agreement by May 22, 1995.

IT IS SO ORDERED.